KOSTELANETZ & FINK, LLP

7 WORLD TRADE CENTER

NEW YORK, NEW YORK 10007

—

TEL: (212) 808-8100

FAX: (212) 808-8108

www.kflaw.com

June 24, 2013

**BY HAND DELIVERY**

Honorable John F. Keenan
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   United States v. Dennis Lerner, 12 Cr. 952 (JFK)

Dear Judge Keenan:

We are the attorneys for defendant Dennis Lerner.  We respectfully submit this letter in connection with Mr. Lerner's sentencing before Your Honor on July 16, 2013.  We have attached hereto selected letters from friends, family and others who attest to Mr. Lerner's good character, his strong leadership skills, and the impact he has had on them as a brother, friend, father, and manager, all of which merit strong consideration as the Court prepares to pass sentence.

Mr. Lerner comes before this Court for sentencing after pleading guilty to two counts of a four-count criminal Information.  Count Two charges him with participating in a matter as an employee of the Internal Revenue Service ("IRS") in which he and an organization with whom he was negotiating had a financial interest, in violation of 18 U.S.C. Section 208.  Count Three charges him with disclosing tax return information to another as an employee of the IRS, in violation of 26 U.S.C. Section 7213.  Mr. Lerner fully accepts responsibility for his wrongdoing and is deeply repentant and remorseful for his actions.  By promptly waiving indictment and

Honorable John F. Keenan
June 24, 2013
Page 2

pleading guilty, Mr. Lerner has acknowledged his misconduct publicly and has spared the Court

and the Government the substantial time and expense of both a grand jury presentation and a jury

trial.  His conduct, while inexcusable, is totally inconsistent with his character and the way he

has otherwise lived his life.

Dennis Lerner was the first person in his family to obtain a college degree.  He went on

to earn a Masters degree in Taxation and spent the majority of his career working in corporate

tax departments, serving as the head of the U.S. Tax Department at BNP Paribas for twenty-two

years.  Mr. Lerner's only non-private employment was for the brief period that he spent as an

International Examiner with the IRS from June 2010 through August 2011.   Without question,

Mr. Lerner exhibited extremely poor judgment by seeking a job with Commerzbank while he

was involved in conducting an audit of that entity and by revealing the name of a taxpayer to his

long-time girlfriend while seeking assistance in drafting an IRS document request in an area of

her expertise.  Through his guilty plea and resulting conviction, Mr. Lerner, who is 60 years old,

has lost his ability to work in the tax field, which is all that he knows.   He has been publicly

shamed by his actions, and he deeply regrets his misdeeds.  Aside from the conduct at issue in

this matter, Mr. Lerner has led a good life and has positively impacted many people on both a

personal and professional level.   He does not deserve to spend time in prison.  We therefore

respectfully submit that the Court impose a term of probation.

We have endeavored to provide enough information about Mr. Lerner to enable Your

Honor to form a complete picture of him as an individual.  In Section I of this letter, we describe

the offenses for which Mr. Lerner has been charged and pleaded guilty.  In Section II, we

describe Mr. Lerner's background -- his childhood, education, work history, contributions to his

Honorable John F. Keenan
June 24, 2013
Page 3

family and co-workers, and health issues.  In Section III, we set forth our position concerning an appropriate sentence.

**I.**      **THE CHARGE AND THE GUILTY PLEA**

On March 11, 2013, Mr. Lerner pleaded guilty to Counts Two and Three of a four-count Information.   Count Two alleges that while he was employed by the IRS, Mr. Lerner participated personally and substantially in settlement negotiations with an organization, specifically Commerzbank, while Mr. Lerner actively sought employment with that bank, in violation of 18 U.S.C. Section 208.  Count Three alleges that Mr. Lerner, while an employee of the IRS, unlawfully disclosed information regarding audits being conducted by the IRS to his long-time girlfriend, who was not an IRS employee, in violation of 26 U.S.C. Section 7213. Each crime of conviction carries a maximum sentence of five years' imprisonment and is therefore a Class D felony.  See 18 U.S.C. Section 3581(b)(4).  Accordingly, a sentence of probation may be imposed.  See 18 U.S.C. Section 3561(a)(1).

Mr. Lerner accepts responsibility for his conduct, and nothing in this submission is intended in any way to denigrate his guilty plea.  Within a short time after his arrest, Mr. Lerner indicated to the government that he intended to plead guilty.  That resulted in the government filing an Information against Mr. Lerner, rather than seeking an indictment from the grand jury. Mr. Lerner deeply regrets his actions and recognizes the harm and nuisance they have caused the IRS and the taxpayers at issue.

**II.**      **PERSONAL HISTORY**

   **A.**      **Mr. Lerner's Childhood, Education, and Family**

Dennis Lerner was born in Brooklyn to Yetta and Jack Lerner, and he grew up with his two older siblings, Sharon and Paul.   When he was eight years old, Mr. Lerner's

Honorable John F. Keenan
June 24, 2013
Page 4

mother, who was only in her 40's, passed away from cervical cancer.    After his mother's

death, the family moved to Whitestone, Queens, where Mr. Lerner lived until he was 21

years old.

Mr. Lerner's father never re-married after Yetta's death, and he raised all three

children on his own.  Mr. Lerner's father, who was in the printing business, was able to

provide the basics for the children, and they had a modest lifestyle.

His sister Sharon, who was married, did not work outside of the home; she passed

away in 1981, succumbing to cervical cancer like her mother.   Mr. Lerner's father died

in 1996 from cancer that metastasized in his brain.  His brother Paul, who works for

Jersey City and maintains the city's boilers, writes in his letter of support that Dennis

"was a wonderful son to our father, taking care of him for years prior to his death."  Exh.

A (Letter of Paul Lerner, dated May 7, 2013).

Mr. Lerner graduated in 1971 from Bayside High School in Queens.  He obtained

a B.A. in History from Queens College in 1974, graduating in just three and a half years.

He then went on to obtain a Masters degree in Taxation from Long Island University in

1979.  In 1984, he attended Adelphi University and became a Certified Financial Planner.

As noted by his brother Paul, Dennis Lerner was the first person in his family to achieve

a college degree.  Paul attributes Dennis's achievements to his "hard work and efforts."

Mr. Lerner was married to Moreen Landfish on September 8, 1974.  Their

marriage produced one child, Hayden Benjamin Lerner, who is now 21 years old,

recently graduated from Wilkes University, and plans to attend law school in the fall.

Mr. Lerner had been separated from Moreen since approximately 1997, and their divorce

was finalized on March 5, 2012.   He maintains a cordial relationship with his ex-wife,

Honorable John F. Keenan
June 24, 2013
Page 5

and she has been supportive of him since he has been charged in this matter.  For

approximately 17 years, Mr. Lerner has been romantically involved with Wendy Gould,

the woman to whom he has admitted providing confidential IRS information.  Mr. Lerner

and Ms. Gould plan to be married in the near future.

Hayden Lerner's letter of support provides significant insight into Dennis Lerner

the father:

> My father has been there my entire life to guide me and counsel me.  He has
> taught me about leadership, teamwork and sportsmanship.  When I was growing
> up, no matter how busy he might have been, my father always took the time to
> come to my sporting events.  He coached some of my baseball teams, my
> basketball teams and my hockey teams.  My father never gave me any special
> treatment.  He treated me no different than any other team member.  He taught us
> not only about how to play the game, but taught us about the game itself.  He
> taught us how to carry ourselves when we won and more importantly, when we
> lost.  He taught us how if we wanted to win, to work as a team, as the team comes
> before the individual.  Everything about the man I am and the man I become is
> due to my father.

Exh. B (Letter of Hayden Lerner, dated May 11, 2013).  These thoughts are reinforced by

Paul Lerner, who writes that Dennis "has been an incredible father to his son, always

supportive, always encouraging him to do his best, to be a leader, to help others.  He even

has been kind and generous to his ex-wife always there to help her in any way he can."

Exh. A.

### B.   **Mr. Lerner's Life as a Respected Manager and Team Leader**

Mr. Lerner has spent his entire career focused on tax.  His first job out of college was as

an accountant at Adorence Company, where he worked for two years.  He then joined the tax

staff at Charter Communications in 1978.  In 1980, he was made tax manager at Thompson

McKinnon Securities.   From 1981 until 1988, he was tax director at Mosley Securities Corp.

From 1988 until early 2010, Mr. Lerner served as a Managing Director and the head of

Honorable John F. Keenan
June 24, 2013
Page 6

U.S. Tax at BNP Paribas, a major international bank with offices all over the world, including

Manhattan.  As the head of U.S. Tax, Mr. Lerner built and oversaw a tax department comprised

of eighteen people.  The U.S. Tax department was responsible for ensuring, among other things,

that BNP Paribas complied with U.S. tax laws.   In 2010, after twenty-two years in his position,

Mr. Lerner was let go from BNP Paribas because he was romantically involved with one of his

subordinates, Wendy Gould, to him he is engaged to be married.[1]

   In the letters of support submitted by Mr. Lerner's co-workers, and even his son, certain

themes about his character emerge:  Dennis was respectful, nurturing, supportive, and inclusive

of others, and he exhibited tremendous integrity in handling complex tax issues of major

financial institutions.   Hayden Lerner, his son, writes,

> Throughout my life, I have had the opportunity to meet many people who have worked
> for my father.  I saw how my father interacted with them.  He always treated everyone
> with care and respect.  They told me that even though my father loved being a leader, he
> always gave credit to his team.  They appreciated the great satisfaction he showed to the
> people working for him when working together to complete a project or meet a deadline.

Exh. B.

   These thoughts are echoed by Elisa Giuliano-Zucaro, who was hired by Mr. Lerner at

BNP Paribas after her bank, BNL, was acquired by BNP Paribas.  At BNL, Ms. Giuliano-Zucaro

held the position of Head of Finance, responsible for all tax matters; Mr. Lerner was Head of Tax

of BNP Paribas.   Since there could only be one person in charge of tax matters at the bank, Ms.

Giuliano-Zucaro had to step down from that position and was offered two positions within BNP,

one as tax audit manager, reporting directly to Mr. Lerner.  Ms. Giuliano-Zucaro chose to work

for Mr. Lerner.  She writes that "Dennis motivates and inspires his staff; he is generous,

supportive, attentive and possesses strong interpersonal skills."  Exh. D (Letter of Elisa Giuliano-

---

[1] Ms. Gould has provided a letter of support for Mr. Lerner, which is attached as Exhibit C.

Honorable John F. Keenan
June 24, 2013
Page 7

Zucaro dated April 16, 2013).  Further evidencing Mr. Lerner's good character, Ms. Giuliano-

Zucaro notes that Mr. Lerner "always advocated and adopted a non-aggressive, non-abusive, and

a conservative approach in dealing with all types of tax matters being faced by the organization."

Id.   Stacey DeSeta, who was hired by Mr. Lerner and worked with him at BNP Paribas for nine

years, talks about his tremendous leadership:

> [N]o matter what position each of us held, Dennis made everyone feel like their role was
> vital and the work we did an essential contribution to the company.  That is no small feat
> as a manager!  Within the organization, Dennis was regarded as a strong leader with
> significant tax expertise and well versed in business and regulatory matters.  In addition,
> he was well-liked by all.

Exh. E (Letter of Stacey DeSeta dated April 22, 2013).  Ms. DeSeta notes that while she worked

for Mr. Lerner, she got married and had children.  She is "grateful for the compassion, guidance,

and encouragement Dennis always showed [her]." Id.  She also considers Dennis a great friend,

and her daughters refer to him as "Uncle Dennis."  Id.

In June 2010, after he was terminated from BNP Paribas, Mr. Lerner was hired by the

IRS as an International Tax Examiner, a position he held through August 2011.   Mr. Lerner was

assigned to the IRS's Manhattan office.  It was while he was employed by the IRS that the

conduct at issue occurred.

Mr. Lerner left the IRS in August 2011, and from September 1, 2011 until his arrest on

October 15, 2012, was employed as Tax Director at Commerzbank, a major international

financial institution, in its Manhattan office.  Aleksandr Golender, who worked with Mr. Lerner

at Commerzbank, writes that, before accepting Dennis's offer to become tax manager of

Commerzbank in January 2011, he conducted due diligence of Mr. Lerner as a boss.  Mr.

Golender reports, "The consensus was that Dennis was a strong leader, a person who would

challenge me to perform, a person who was technically strong and someone I would learn from.

Honorable John F. Keenan
June 24, 2013
Page 8

Dennis came as advertised." Exh. F (Letter of Aleksandr Golender, dated April 22, 2013). Mr. Golender notes that "Dennis made each person in the tax department feel as important as the next, no matter what position was held. He made sure everyone knew we were a team. Credit always went to the team." Id. Mr. Golender provides insight into Dennis Lerner's integrity in the way that he, in the short time he ran the tax department at Commerzbank, identified and resolved significant tax issues to insure that the bank was fully compliant with the tax laws. Id. Finally, even knowing that Mr. Lerner has entered a guilty plea to federal criminal charges, Mr. Golender states that, in the extremely unlikely event that Mr. Lerner is ever in a position to offer him a job, he would "strongly consider it." Id. That sentiment alone speaks volumes about Dennis Lerner as a manager, a co-worker, and a person.

Commerzbank terminated Mr. Lerner's employment shortly after his arrest in September 2012. Since that time, he has been unemployed.

### C.      Explanation for Mr. Lerner's Offenses

Mr. Lerner was arrested at his home on September 27, 2012. Mr. Lerner describes his reaction to his arrest as one of shock and disbelief. Since he has had time to reflect on the charges and the chronology of events, he has come to understand that his conduct not only violated IRS rules but it also violated the law. Through his guilty plea, he has accepted that grim reality.

Nonetheless, it is important for the Court in determining Mr. Lerner's sentence to have an understanding of his mindset at the time he committed the offenses to which he has pleaded guilty. As set forth above and in the PSR, but for fifteen months at the IRS, Mr. Lerner spent his entire career in the private sector. For much of that time, Mr. Lerner was a tax director who managed a team of people. He was used to handling complex issues and interfacing with other

Honorable John F. Keenan
June 24, 2013
Page 9

factions of the business as well as with outside auditing firms.  Aleksandr Golender provides an

example of this in his letter of support:

> In the time we worked together, Dennis made many changes at the bank.  He improved
> the processes for tax provisions and tax return compliance.  He hired a CPA firm to
> review the tax returns that the tax department prepared. . . . . He hired a second CPA firm
> to review and made changes and recommendations for the bank['s] transfer pricing.  In
> an effort to improve communication within finance Dennis suggested departmental
> lunches where each section of finance would have a person discuss what was going on in
> their section.  This worked extremely well as it helped people to understand someone
> else's processes. . . . Dennis took the tax department from just [a] tax compliance
> department and made it relevant.  He created relationships with legal, finance, fixed
> income, structured finance and management both here in the U.S. and in Germany.

Exh. F.  This is how Mr. Lerner was used to conducting business:  interacting with others both

inside and outside of the institution in order to enhance the institution's business.

Mr. Lerner found it very difficult to adjust to the environment at the IRS.  He admits that

he felt that he was not being intellectually challenged and was frustrated by the bureaucracy.  He

also felt that he had more knowledge of complex tax issues than those to whom he reported.  He

expressed those feelings in what he believed to be his private e-mails with his girlfriend of

seventeen years and now fiancé, Wendy Gould.  The government spelled out those

communications in embarrassing detail in its charges against Mr. Lerner, particularly in the

initial complaint filed against him.  Shortly after he began working at the IRS, Mr. Lerner

realized that he had made a mistake and did not belong there, so he took steps to try to find

another job.

While at the IRS, Mr. Lerner handled one portion of the audit of Commerzbank, which

was focused on withholding tax, and one of his IRS colleagues handled the other portion of the

audit, which was focused on income tax.  The audit was focused on the conduct of another

financial institution that had been taken over by Commerzbank, so the management of

Honorable John F. Keenan
June 24, 2013
Page 10

Commerzbank was not at issue in the audit.   The total amount of tax and interest at issue was approximately $300 million.   Mr. Lerner discussed the case with his supervisor and understood that his supervisor believed that a 2/3 settlement, which would be an amount close to $200 million, would be a very good settlement, and that no penalties should be imposed because the conduct at issue had nothing to do with current Commerzbank management.

In conducting the audit of Commerzbank, Mr. Lerner dealt directly with the bank's then-Tax Director.  Mr. Lerner spent a significant amount of time at Commerzbank's offices, and he developed a cordial relationship with the Tax Director.  In the course of their discussions, Mr. Lerner learned that the Tax Director was interviewing for Mr. Lerner's old job as Tax Director at BNP Paribas.   In fact, that individual sought Mr. Lerner's advice in helping him to obtain Mr. Lerner's old job at BNP Paribas.   These communications, which occurred while Mr. Lerner was auditing Commerzbank, clouded Mr. Lerner's judgment and blurred the lines between the audit and his own desire for a different job.   In Mr. Lerner's mind, once Commerzbank agreed to settle his portion of the audit for over $200 million – the amount approved by his supervisor -- which it did in mid-July 2011, he was free to engage in discussions about working at Commerzbank, and seeking to replace its soon-to-depart Tax Director, because his substantive work on the audit had come to an end.

Mr. Lerner exhibited extremely poor judgment in failing to first obtain IRS approval to interview with Commerzbank.  He wrongly assumed that because people at the highest levels of management at Commerzbank knew that he had been the IRS examiner conducting its audit, there was nothing wrong with seeking and accepting a job at the bank.   He now understands that the settlement entered into between Commerzbank and the IRS is suspect because he, the IRS examiner conducting the audit, was working under a conflict of interest.

Honorable John F. Keenan
June 24, 2013
Page 11

In discussing the conduct that resulted in his guilty plea to Count Three of the

Information, Mr. Lerner explains that one of his IRS colleagues was conducting an audit of an

international bank's transfer pricing practices and was having difficulty drafting an Information

Document Request ("IDR") to the bank.   The colleague asked Mr. Lerner for his help.  Ms.

Gould, Mr. Lerner's fiancé, is an expert in transfer pricing, so Mr. Lerner offered to seek her

assistance in drafting the IDR.  There is absolutely nothing wrong with a government employee

seeking outside assistance in this way, and this behavior was consistent with Mr. Lerner's

practice of helping members of his team, whether it was at BNP Paribas or the IRS.   The

mistake that Mr. Lerner made, however, which went over the line of propriety and into the realm

of criminal conduct, is that he told Ms. Gould the name of the bank under audit.   Given his long-

standing romantic relationship with Ms. Gould, he was sloppy in his communication and

certainly should not have revealed the name of the bank to her.  Mr. Lerner unfortunately

wrongly believed that because he had a relationship of trust with Ms. Gould, similar to a husband

and wife, he did not need to guard that information.  He now appreciates that this assumption

was terribly wrong.

### D.   Mr. Lerner's Health Issues

As noted in the Presentence Report, Mr. Lerner has significant health issues, including

heart disease and diabetes.  (PSR at Paragraphs 80, 81).   As set forth in the letter of Dr. Aaron

A. Stein, of Northern New Jersey Cardiology Associates, PA, which is attached as Exhibit G,

Mr. Lerner underwent coronary artery bypass surgery in 2002.   Mr. Lerner has a "history of

hypertension and hypercholesterolemia" as well as "diabetes mellitus."  He takes a number of

medications, including a daily injection of Victoza to control his diabetes.   Although he has

done well since his bypass surgery, Dr. Stein notes that Mr. Lerner "has high risk vascular

Honorable John F. Keenan
June 24, 2013
Page 12

disease" and concludes that it would be "unhealthy for Mr. Lerner to spend time incarcerated in

prison" because of the extensive medical regime he must conduct on a daily basis, including

injecting medication and checking his blood glucose with a finger stick test.   Dr. Merab Joseph,

of North Jersey Diabetes and Endocrinology, writes that Mr. Lerner has been his patient since

2009 and has Type 2 diabetes, hypertension, hyperlipidemia, obesity and peripheral neuropathy.

Dr. Joseph notes that Mr. Lerner's diabetes control is "poor" and likely will deteriorate if he is

incarcerated.   Exh. H (Letter of Merab Joseph, M.D.).

## III.   THE SENTENCING FACTORS ENUMERATED IN 18 U.S.C. § 3553(a) MILITATE IN FAVOR OF LENIENCY

Eight years ago, in announcing that the United States Sentencing Guidelines are advisory,

not mandatory, the Supreme Court stated that a sentencing court is called upon to exercise

"broad but informed discretion" in imposing a sentence consistent with the factors enumerated

by Congress in 18 U.S.C. § 3553(a).   United States v. Booker, 543 U.S. 220 (2005).   The

Guidelines, therefore, are no longer "the only consideration" at sentencing.   Gall v. United

States, 552 U.S. 38 (2007).

In undertaking its sentencing analysis, the Court must give consideration to the

sentencing range recommended by the Guidelines and any relevant Guideline policy statements,

as well as several other traditional sentencing factors, such as: (1) the nature and circumstances

of the offense and the history and characteristics of the defendant; (2) the need to protect the

public from further crimes from the defendant; (3) the need for the sentence imposed to reflect

the seriousness of the offense, to promote deterrence, respect for the law and to provide just

punishment; (4) the type of sentences available; (5) the interests of consistency in sentencing;

and (6) the need to provide restitution.   See 18 U.S.C. § 3553(a).   Once an applicable Sentencing

Honorable John F. Keenan
June 24, 2013
Page 13

Guidelines range has been determined, the Court has a duty, imposed by subsection 3553(a)(4),

to "consider" it, along with all other enumerated factors in fashioning a sentence that is

"sufficient, but not greater than necessary," to comply with the purposes of sentencing.  18

U.S.C. § 3553(a).  See United States v. Habbas, 527 F.3d 266, 274 (2d Cir. 2008).

We have set forth above a description of the nature and circumstances of the offenses and

the history and characteristics of Mr. Lerner.  We submit that Mr. Lerner's offenses, while

serious, are illustrative of someone who made a series of poor judgments rather than a person

intent on causing injury to the IRS and the taxpayers at issue.   As is evident from the letters of

support that are before the Court, Mr. Lerner is respected and looked up to by his co-workers,

particularly those he supervised, and his family.   There is very little chance that Mr. Lerner, who

has never before this case had even the slightest blemish on his record, will engage in further

criminal conduct.

As noted above, shortly after his arrest in September 2012, Mr. Lerner authorized his

attorneys to notify the Government that he intended to enter a guilty plea.  Mr. Lerner has,

through his guilty plea, taken full responsibility for his actions.   He has publicly admitted that he

not only operated under a conflict of interest while performing an audit of a major international

bank, but also that he revealed to his girlfriend the name of a taxpayer under audit.  Mr. Lerner

has suffered greatly as a result of his arrest and guilty plea.  He has lost the ability to make a

living in the field of his expertise, in which he has worked steadily and at a high level for over 30

years.  He will be required to find a new field of work, and the fact that he is now 60 years old

and a convicted felon with health problems makes him an unattractive risk for any new

employer.  Mr. Lerner's employment prospects are bleak.

Honorable John F. Keenan
June 24, 2013
Page 14

Mr. Lerner is keenly aware that his prosecution serves as a reminder to all IRS employees that they must take very seriously the need to conduct their important work conflict-free and to carefully guard taxpayer information.  This case has received attention in the press, and we are aware that IRS officials have referenced Mr. Lerner's arrest in public speaking engagements. There is no doubt that the very fact that Mr. Lerner was charged criminally in such a public fashion has served and will continue to serve as a considerable deterrent to others who may consider violating the IRS's rules.

Finally, the Court should consider the need for consistency in sentencing.  The only other recent case of which we are aware in which an IRS agent was criminally prosecuted for similar conduct is U.S. v. Claybrooks, 09 Cr. 744 (N.D. Cal.).  The indictment alleges that Claybrooks was an IRS officer who worked personally with individuals to resolve their tax delinquencies. While he was still employed with the IRS, Claybrooks obtained a real-estate license and began moonlighting for two mortgage brokers.  Claybrooks used his IRS position to steer individuals with outstanding tax liabilities towards refinancing their homes with one of the mortgage brokers for whom he worked in exchange for a finder's fee from the broker; those fees totaled approximately $20,000.  In addition, on several occasions, Claybrooks used an IRS database to improperly access confidential taxpayer information.  Claybrooks pleaded guilty to one violation of 18 U.S.C. § 208, the charge at issue in Count Two of the Information against Mr. Lerner, and two violations of 18 U.S.C. § 1030, which concerns fraud and related activity in connection with computers.  Claybrooks was sentenced to 2 years probation, a $75 special assessment, which is consistent with three misdemeanor counts, and a $7,000 fine.  See Exh. I (Indictment and docket sheet in U.S. v. Claybrooks, 09 Cr. 744 (N.D. Cal.)).

Honorable John F. Keenan
June 24, 2013
Page 15

We submit that Mr. Lerner's conduct is analogous to that engaged in by Claybrooks, who received a sentence of probation.   A sentence of probation for Mr. Lerner, then, would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## CONCLUSION

Mr. Lerner comes before this Court genuinely remorseful for his criminal offenses and humbled by the shame that he has brought upon himself and his family. In determining a punishment, we respectfully request that the Court take into account all aspects of Mr. Lerner's life, his character, the circumstances of his offenses, his health, his previously unblemished record, and his quick decision to waive indictment and plead guilty.   We submit that such factors warrant leniency and a sentence that does not include incarceration.   We therefore respectfully request that the Court impose a sentence of probation.

Dated: New York, New York
      June 24, 2013

Respectfully submitted,

KOSTELANETZ & FINK, LLP

By: _____
      Sharon L. McCarthy

cc:    (By e-mail)
       AUSA Randall Jackson
       USPO Emily Frankelis

# EXHIBIT A

May 7, 2013

Dear Judge Keenan:

My name is Paul Lerner and I am the brother of Dennis Lerner. I am writing this letter in support of my brother who has pled guilty to two felony charges.

Writing this letter is difficult as my brother has never done anything remotely wrong in his life. He has been and is a good person. He was a wonderful son to our father, taking care of him for years prior to his death. He is a great brother and friend to me who has always been there to listen to my troubles and to help me in any way possible whether emotionally or financially. He has been an incredible father to his son, always supportive, always encouraging him to do his best, to be a leader, to help others. He even has been kind and generous to his ex-wife always there to help her in any way he can.

My brother is the only person in our family to have gone and graduated from college. The success he has had throughout his life has been due to his hard work and efforts.

Since this has all happened, life has been different for my brother. He has lost all his licenses. His days are not filled with office problems. He has been hurt. He is not as happy as he was. He wants to go back to work and utilize his knowledge but I do not think he will have that opportunity. In the years ahead, I want my brother to be happy, not look back at what was, but look forward to all of the good things to come. To his son graduating from law school, to his getting married and having his own children. To my brother getting married to his wonderful fiancé who stands by him and believes in him, and to our continued friendship and love for one another for a long time to come.

My brother is a good man who has already suffered tremendously. I am asking your honor to please be lenient at his time of sentencing.

Sincerely,

Paul Lerner

Paul Lerner

# EXHIBIT B

May 11, 2013

Dear Judge Keenan:

My name is Hayden Lerner. Dennis Lerner is my father and he will stand before you for sentencing in July for pleading guilty on two felony charges. I wish that you could talk to my father to get a sense of the type of man he is. If you cannot, let me give you an idea.

Who is my father? I think to answer this question it would be best to see who I am and where I am in my life. I am twenty-one years old, about to graduate college with a dual Bachelors degree in Psychology and Neuroscience, and I am two months away from starting my first year in law school. I would have to say without the values, lessons and morals he has instilled in me I would not be the man I am on track to become.

My father has been there my entire life to guide me and counsel me. He has taught me about leadership, teamwork and sportsmanship. When I was growing up, no matter how busy he might have been, my father always took the time to come to my sporting events. He coached some of my baseball teams, my basketball teams and my hockey teams. My father never gave me any special treatment. He treated me no different than any other team member. He taught us not only about how to play the game, but taught us about the game itself. He taught us how to carry ourselves when we won and more importantly, when we lost. He taught us how if we wanted to win, to work as a team, as the team comes before the individual.  Everything about the man I am and the man I become is due to my father.

Throughout my life, I have had the opportunity to meet many people who have worked for my father. I saw how my father interacted with them. He always treated everyone with care and respect. They told me that even though my father loved being a leader, he always gave credit to his team. They appreciated the great satisfaction he showed to the people working for him when working together to complete a project or meet a deadline.

Needless to say, no one is perfect. We all have regrets in life, and we all have made mistakes we wish we could take back. My father has suffered over these past six months. He may never again have an opportunity to be in a position of leadership. My father has to live now with the mistakes he has made. There is no need for further acts of punishment. I am respectfully asking you to show leniency when my father is sentenced.

Sincerely,

Hayden Lerner

# EXHIBIT C

April 18, 2013

Wendy Gould

(516) 627-6912
wagjvt244@optonline.net

To: Judge Keenan

I am writing this letter on behalf of Dennis Lerner. First, I would like to point out that I am fully aware of the facts and circumstances surrounding Dennis' legal issues as I have shared both a personal and professional relationship with Dennis for over 17 years, and was the individual identified in the indictment as Individual Number 1.

When I think of Dennis, one of the first things that come to mind is his love of work, and his meaningful approach to the task at hand. Dennis has held many positions within the tax community over the course of his career, including as the Head of US Tax for BNP Paribas for over 20 years before joining the Internal Revenue Service ("IRS"). It is at BNP Paribas that I first met Dennis in 1991, and it is here where he hired and mentored me throughout a large part of my career. For several years the Tax Department consisted of just the two of us, and it was our responsibility as a team to tackle all of the tax issues faced by the Bank here in the US. As the organization grew, Dennis built a strong, efficient, productive US tax team under his leadership and guidance. Dennis motivated and inspired the team to excel on behalf of the Bank, and to take pride in our work product. From a tax filing and consulting perspective, his approach was always conservative when advising the Bank, to ensure full compliance with US tax rules and regulations. As a result, it is fair to say that the Bank has a strong reputation and working relationship with the tax authorities assigned to audit the Bank today.

I believe it is this philosophy and work ethic that Dennis carried with him to his position at the IRS. While it may have been an interest of Dennis' to seek and find employment back in the private sector, he tackled the issues faced as a government tax auditor with same motivation and goal-oriented resolution as he did as the Tax Director at the Bank.

On a personal note, I can tell you that Dennis has been devastated by everything that has transpired as a result of leaving the IRS and his taking a new position as Head of US Tax at another Bank. While he now clearly understands his poor judgment, he has lost so much, most importantly, his ability to work in the industry that he has devoted the last 33 years of his career to. For a man whose top priority, outside of being a Father, was his love of work, his arrest and subsequent guilty plea has destroyed his reputation and spirit.

Despite all of the negative publicity surrounding this case concerning Dennis' character, he is a very good man, who is respected and loved dearly by his son, his family and his friends. He has always been there for anyone who needed a helping hand or voice of reason. Having been personally touched by this case, I am more than comfortable to say that I do not believe that Dennis was fully aware of the severity of his actions, and that he was breaking the law. Unfortunately, he understands now and deeply regrets his decisions and actions, for which he has already paid a terrible price.

Thank you for allowing me the opportunity to write this letter on behalf of Dennis.

Sincerely yours,

Wendy Gould

Wendy Gould

# EXHIBIT D

Elisa Giuliano-Zucaro
███████████████
███████████████
Tel # (917) 362-3716
Email: elisa.giuliano@yahoo.com

To: Judge Keenan

April 16, 2013

I met Dennis, the Head of Tax at BNP Paribas, in 2006 soon after the BNL acquisition by BNPP was announced. In my capacity as the head of Finance and Tax at BNL, I worked closely with Dennis for several months on all tax matters related to the merger.

Subsequently, upon the merger, Dennis offered me a position within the tax department at BNPP, reporting directly to him, in the capacity of tax audit manager. Dennis felt that my personality would work well in this capacity and that my knowledge of accounting and accounting systems would be of great help to the company in order to respond to Information Document Requests by government authorities. More importantly, Dennis believed that I would find this job to be a challenging yet rewarding experience. He was right!

At all times and at a professional level, Dennis has always exhibited effective leadership abilities, and a deep expertise, know-how and competence in the full range of business and tax matters. He is a reliable and trustworthy individual who has always acted with integrity and honesty and complied with the all applicable federal, state and local laws, rules and regulations.

During the time I worked with Dennis at BNL and BNPP, he always advocated and adopted a non-aggressive, non-abusive, and a conservative approach in dealing with all types of tax matters being faced by the organization. When a certain business lines bypassed internal written guidelines in order to do transactions that could be harmful to BNPP, Dennis immediately reported the business to the Reputational Risk Committee and had the business closed down. His compliance with internal rules, procedures and industry best practice is very strong and of the highest quality.

On a personal level, Dennis motivates and inspires his staff; he is generous, supportive, attentive and possesses strong interpersonal skills. Outside the office he is very pleasant and fun to be with.

Although I am aware of the legal issues that Dennis Lerner is currently facing, that will not change my opinion regarding his professional conduct during the time we worked together.

It has been an honor and pleasure to know and to work with Dennis.

Sincerely yours,

*Elisa Giuliano Zucaro*

Elisa Giuliano-Zucaro
Director - Tax Audit Manager
BNP Paribas
Tax Department
525 Washington Blvd
Jersey City, NJ 07310

# EXHIBIT E



e-mail: sdeseta@verizon.net


April 22, 2013


Dear Judge Keenan,


I am writing to you in regards to Dennis Lerner, who I have known for over 10 years.  I first met Dennis in 2002 when I interviewed with him for a position in the Tax Department of BNP Paribas.  At the time, He was the U.S. Head of Tax for BNP Paribas.

I went to work for BNP Paribas in 2003 and reported to Dennis until his departure from the Bank in 2010.  I have had such a wonderful experience working for the Bank, in great part, due to Dennis.  He has been such a great leader to work for.  I am sure my colleagues within the Tax Department would agree when I say that no matter what position each of us held, Dennis made everyone feel like their role was vital and the work we did an essential contribution to the company.  That is no small feat as a manager!  Within the organization, Dennis was regarded as a strong leader with significant tax expertise and well versed in business and regulatory matters.  In addition, he was well-liked by all.

On a more personal level, I would like to point out that I went to work for Dennis as a single working professional.  By the time Dennis left the Bank, I was a married, working mother of two children.  I worked with Dennis during a period of my life which saw the greatest growth - on both a professional and a personal level.  I am grateful for the compassion, guidance, and encouragement Dennis always showed me.

Aside from being my manager, Dennis also became a great friend.  Though I was very saddened to see Dennis leave the Bank knowing I would not get to interact with him on a daily basis, I was comforted by the fact that our friendship would endure for years to come.  He has become a very dear friend to my entire family and has earned the title of "Uncle Dennis" from my daughters.

I am aware of the charges that were brought up against Dennis last fall and the fact that he has pleaded guilty to those charges.  These events do not change my opinion of Dennis.  I hold him in a very high regard as a manager, a mentor, and a friend.

Sincerely,

Stacey DeSeta

Stacey DeSeta

Vice President – Bank Tax Compliance and Planning

BNP Paribas RCC, Inc.

# EXHIBIT F

To: Judge Keenan
From: Aleksandr Golender

April 22, 2013

      My name is Aleksandr Golender. I am writing this letter on behalf of Dennis Lerner. Dennis hired me to be tax manager of Commerzbank in January of 2011. Before accepting the position at Commerzbank, I inquired about Dennis from tax partners, tax directors and various people who had previously worked for Dennis to describe him to see if I was making a right decision. The consensus was that Dennis was a strong leader, a person who would challenge me to perform, a person who was technically strong and someone I would learn from. Dennis came as advertised. In the time we worked together, Dennis made many changes at the bank. He improved the processes for tax provisions and tax return compliance. He hired a CPA firm to review the tax returns that the tax department prepared. This was something that had not been done in many years. He hired a second CPA firm to review and made changes and recommendations for the banks transfer pricing. In an effort to improve communication within finance Dennis suggested departmental lunches where each section of finance would have a person discuss what was going on in their section. This worked extremely well as it helped people to understand someone else's processes. What truly stands out for me was that in a reviews of prior years tax compliance, we determined that certain state returns had not been filed since 2005 and federal withholding tax compliance had not been done for 10 years. Dennis immediately created a project to resolve all of this and made sure management understood this needed to be done regardless of the additional tax, interest and penalties. Dennis was trying to show management that the tax department was going to do things properly. Dennis took the tax department from just tax compliance department and made it relevant. He created relationships with legal, finance, fixed income, structured finance and management both here in the U.S. and in Germany. In addition, Dennis made each person in the tax department feel as important as next, no matter what position was held. He made sure everyone knew we were a team. Credit always went to the team.

      For me personally, Dennis wanted me to grow as a tax professional. He would bring me into meetings with the structured finance team so that I would learn about different types of tax transactions and gave me all of the opinions that he had written so I would learn about the tax technical aspects of each transaction. His door was always open for discussion.

      I am aware of the legal issues that Dennis faces and that he pleaded guilty to two felony counts. I am quite certain that it will be difficult for Dennis to find work, let alone a tax director's position. But if he did and he was in a position to be able to offer me a job, I would strongly consider it.

      As a point of information, I left Commerzbank on March 29th, 2013 and have gone back to public accounting.

Sincerely yours,
Aleksandr Golender

# EXHIBIT G

# NORTHERN NEW JERSEY CARDIOLOGY ASSOCIATES, PA

7704 Marine Road                                                          200 Grand Avenue
North Bergen, NJ 07047                                          Englewood, NJ 07631
Tel:  201-869-1313                                                    Tel:  201-567-9010
Fax:  201-854-7945

May 10, 2013

Sharon L. McCarthy
Kostelanetz & Fink, LLP
7 World Trade Center
New York, NY 10007

RE:  Dennis Lerner

Dear Ms. McCarthy:

I am writing this letter regarding the medical status of Dennis Lerner at his and your request.  Mr. Lerner underwent coronary artery bypass surgery in 2002.  He has done well from a cardiac point of view since that time.  He has a history of hypertension and hypercholesterolemia and over the last few years, diabetes mellitus.  He takes a fairly extensive medical regimen which includes the following medications:  Crestor 10 mg, bisoprolol 5 mg (for coronary artery disease), Plavix 75 mg, aspirin 81 mg, metformin 1000 mg twice daily, Victoza 18 mg (that I believe he injects daily per his diabetologist, Dr. Joseph), glimepiride 1 mg daily.  The patient follows his blood glucoses as per the orders of his diabetologist on a daily basis.  The diabetologist notes that the patient also has peripheral neuropathy.

The patient has remained symptomatically stable and yet has high risk vascular disease including prior bypass surgery and diabetes mellitus with some complication as noted above.  It would be unhealthy for Mr. Lerner to spend time incarcerated in prison.  Not only would it be unwise from a cardiovascular point of view, but from diabetic control point of view in terms of diet, injectable medication, and checking fingerstick blood glucoses on a daily basis.  This might be quit onerous and unwise in a prison setting.

Sincerely yours,

Aaron A. Stein, M.D.

TAPE #:  912-01-001830

ms/

---

**Page 1 of 1**

**AARON A. STEIN, M.D.  ★  MARK GABELMAN, M.D.  ★  DENNIS H. KELLY, M.D.**

# EXHIBIT H



# North Jersey Diabetes and Endocrinology
## Center of Diabetes, Endocrine and Metabolic Disorders

**Merab Joseph, M.D., F.A.C.E.**

RE: **LERNER DENNIS**

To Whom It May Concern:

I would like to notify you that Mr. Dennis Lerner is a patient of mine since 2009. He has past medical history of Type 2 Diabetes, Hypertension, Hyperlipidemia, Obesity and Peripheral Neuropathy.

Mr. Lerner's diabetes control is poor which increases his chances of getting micro- and macrovascular complications. As his endocrinologist I ask you to take into consideration that Mr. Lerner's clinical condition, including his diabetes control, will likely deteriorate in case of his incarceration.

Should you have any questions please do not hesitate to contact me.

Sincerely,

Merab Joseph, MD

# EXHIBIT I

JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

**FILED**

JUL 2 2 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

*E-filing*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CR 09-00744** SBA |
| Plaintiff, | ) |
| | ) VIOLATIONS: 18 U.S.C. §§ 208, 216(a)(2) |
| v. | ) – Acts Affecting a Personal Financial |
| | ) Interest (3 Counts); 18 U.S.C. § |
| MARK CLAYBROOKS, | ) 1030(a)(2)(B) – Fraud and Related Activity |
| | ) in Connection with Computers, a Class A |
| Defendant. | ) Misdemeanor (2 Counts) |
| | ) |
| | ) OAKLAND VENUE |
| _____ | ) |

I N D I C T M E N T

The Grand Jury charges that:

Introductory Allegations

I. The Defendant

   1. From approximately January 2003 through the present, the defendant MARK
CLAYBROOKS ("CLAYBROOKS") was a Revenue Officer for the United States Department
of Treasury, Internal Revenue Service ("IRS") located in Walnut Creek, California. As an IRS
Revenue Officer, CLAYBROOKS had an inventory of individuals and businesses assigned to
him and with whom he needed to resolve outstanding tax delinquencies.

   2. From approximately April 2003 through the present, CLAYBROOK had a real estate
license through the California Department of Real Estate.

INDICTMENT
CR

1      3.  From at least April 2003 through approximately September 2005, CLAYBROOKS

2    worked for Faith Mortgage Group, a mortgage broker business, located in Antioch, California,

3    refinancing personal residence loans.

4       4.  From approximately September 2005 through approximately December 2008,

5    CLAYBROOKS worked for Alpha Loans and Omega Realty, a mortgage broker business,

6    located in Walnut Creek, California, refinancing personal residence loans.

7

8    <u>COUNT ONE:</u>    (18 U.S.C. §§ 208, 216(a)(2) – Acts Affecting a Personal Financial Interest)

9       5.  From on or about March 12, 2002 through on or about December 1, 2008, in the

10   Northern District of California, and elsewhere, the defendant,

11                      MARK CLAYBROOKS

12   being an officer and employee of the executive branch of the United States government, that is, a

13   Revenue Officer with the United States Department of Treasury, Internal Revenue Service, did

14   knowingly and willfully participate personally and substantially as a government officer and

15   employee, through decision, approval, recommendation, the rendering of advice and otherwise,

16   in a determination and other particular matter, that is, a collections case involving an individual,

17   known to the grand jury and identified as J.O. and others in which he recommended that J.O. pay

18   off delinquent federal income tax obligations by refinancing with Faith Mortgage Group, a

19   business in which defendant knew he had a financial interest as he received money for referrals,

20   and thereafter defendant received a check in the amount of $7,560.00 from Faith Mortgage, all in

21   violation of Title 18, United States Code, Sections 208(a) and 216(a)(2).

22

23   <u>COUNT TWO:</u>   (18 U.S.C. §§ 208, 216(a)(2) – Acts Affecting a Personal Financial Interest)

24       6.  From on or about March 12, 2002 through on or about December 1, 2008, in the

25   Northern District of California, and elsewhere, the defendant,

26                      MARK CLAYBROOKS

27   being an officer and employee of the executive branch of the United States Government, that is, a

28   Revenue Officer with the United States Department of Treasury, Internal Revenue Service, did

INDICTMENT
CR                              2

1  knowingly and willfully participate personally and substantially as a Government officer and

2  employee, through decision, approval, recommendation, the rendering of advice and otherwise,

3  in a determination and other particular matter, that is, a collections case involving an individual

4  known to the grand jury and identified as J.O. and others in which he recommended that J.O. pay

5  off delinquent federal income tax obligations by refinancing with Faith Mortgage Group, a

6  business in which defendant knew he had a financial interest as he received money for referrals,

7  and thereafter defendant received a check in the amount of $7,340.00 from Faith Mortgage, all in

8  violation of Title 18, United States Code, Sections 208(a) and 216(a)(2).

9

10  COUNT THREE: (18 U.S.C. §§ 208, 216(a)(2) – Acts Affecting a Personal Financial Interest)

11         7. From on or about June 2000 through on or about April 2007, in the Northern District

12  of California, and elsewhere, the defendant,

13                                    MARK CLAYBROOKS

14  being an officer and employee of the executive branch of the United States Government, that is, a

15  Revenue Officer with the United States Department of Treasury, Internal Revenue Service, did

16  knowingly and willfully participate personally and substantially as a Government officer and

17  employee, through decision, approval, recommendation, the rendering of advice and otherwise,

18  in a determination and other particular matter, that is, a collections case involving two

19  individuals known to the grand jury and identified as G.P. and K.P. in which he recommended

20  that G.P. pay off delinquent federal income tax obligations by refinancing with Faith Mortgage

21  Group, a business in which defendant knew he had a financial interest as he received money for

22  referrals, and thereafter defendant received a check in the amount of $5,983.20 from Faith

23  Mortgage, all in violation of Title 18, United States Code, Sections 208(a) and 216(a)(2).

24

25  COUNT FOUR: (18 U.S.C. § 1030(a)(2)(B) – Fraud and Related Activity in Connection with
                      Computers)

26         8. On or about November 4 and 7, 2005, in the Northern District of California, and

27  elsewhere, the defendant,

28

1                                    MARK CLAYBROOKS

2   did intentionally access an Internal Revenue Service computer, and, without authorization and in

3   excess of any authorized access, did obtain individual personal taxpayer information of an

4   individual known to the grand jury and identifies as E.A. from the Internal Revenue Service, an

5   agency of the United States, in violation of Title 18, United States Code, Section 1030(a)(2)(B), a

6   Class A misdemeanor.

7

8   <u>COUNT FIVE:</u>    (18 U.S.C. § 1030(a)(2)(B) – Fraud and Related Activity in Connection with
                          Computers)

9

        9.  On or about June 22, 2005 and July 17, 19, 2005 and August 11, 2006, in the Northern

10  District of California, and elsewhere, the defendant,

11                                   MARK CLAYBROOKS

12  did intentionally access an Internal Revenue Service computer, and, without authorization and in

13  excess of any authorized access, did obtain individual personal taxpayer information of an

14  individual known to the grand jury and identified as J.B. from the Internal Revenue Service, an

15  agency of the United States, in violation of Title 18, United States Code, Section 1030(a)(2)(B), a

16  Class A misdemeanor.

17  Dated:   7-22-09                              A TRUE BILL

18

19                                               FOREPERSON

20

21  JOSEPH P. RUSSONIELLO
    United States Attorney

22

23  STEPHEN CORRIGAN
    Deputy Chief, Oakland

24

25  (Approved as to form:                                    )
                                      AUSA BESSETTE

26

27

28

                                            4

CLOSED,E-Filing

# U.S. District Court
## California Northern District (Oakland)
### CRIMINAL DOCKET FOR CASE #: 4:09-cr-00744-LB-1

Case title: USA v. Claybrooks

Date Filed: 07/22/2009
Date Terminated: 03/23/2010

---

Assigned to: Magistrate Judge Laurel Beeler

### Defendant (1)

**Mark Claybrooks**
*TERMINATED: 03/23/2010*

represented by **Mario L. Andrews**
4100 Redwood Road, Suite 313
Oakland, CA 94619
(510) 686-1142
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Pending Counts | Disposition |
|---|---|
| 18:208, 216(a)(2): Acts affecting a personal financial interest (3) | two (2) years probation; $25 special assessment |
| 18:1030(a)(2)(B): Fraud and related activity in connection with computers (4-5) | two (2) years probation; $50 special assessment; $7,000 fine |

### Highest Offense Level (Opening)

Misdemeanor

| Terminated Counts | Disposition |
|---|---|
| 18:208, 216(a)(2): Acts affecting a personal financial interest (1-2) | dismissed on government's motion |

### Highest Offense Level (Terminated)

Felony

**Complaints**                                                         **Disposition**

None

_____

**Plaintiff**

**USA**                                      represented by **Maureen Bessette**
                                             U.S. Attorney's Office
                                             1301 Clay St., Rm. 340S
                                             Oakland, CA 94708
                                             510-637-3691
                                             Email: maureen.bessette@usdoj.gov
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/22/2009 | 1 | INDICTMENT as to Mark Claybrooks (1) count(s) 1-3, 4-5. (kc, COURT STAFF) (Filed on 7/22/2009) (Entered: 07/23/2009) |
| 07/22/2009 |   | CASE DESIGNATED for Electronic Filing. (kc, COURT STAFF) (Filed on 7/22/2009) (Entered: 07/23/2009) |
| 07/23/2009 |   | Initial Appearance set for 7/30/2009 at 10:00 AM before Magistrate Judge Wayne D. Brazil. (kc, COURT STAFF) (Filed on 7/23/2009) (Entered: 07/23/2009) |
| 07/24/2009 | 2 | Summons Returned Executed on 7/24/09 as to Mark Claybrooks (kc, COURT STAFF) (Filed on 7/24/2009) (Entered: 07/27/2009) |
| 07/30/2009 | 3 | Minute Entry for proceedings held before Magistrate Judge Wayne D. Brazil: Initial Appearance as to Mark Claybrooks held on 7/30/2009. Arraignment as to Mark Claybrooks (1) on Counts 1-3, 4-5 held on 7/30/2009. NOT GUILTY plea entered. I.D. of Counsel Hearing as to Mark Claybrooks held on 7/30/2009. Added attorney Mario L. Andrews for Mark Claybrooks. Status or Trial Setting Hearing set for 9/15/2009 at 09:00 AM before Hon. Saundra Brown Armstrong. Remanding defendant to custody. (Tape #FTR 7/30/09 10:28:16.) (kc, COURT STAFF) (Filed on 7/30/2009) (Entered: 08/03/2009) |
| 09/15/2009 | 4 | Minute Entry for proceedings held before Judge Hon. Saundra Brown Armstrong:Status Conference as to Mark Claybrooks held on 9/15/2009 Status Conference set for 10/27/2009 09:00 AM. (Court Reporter DIANE SKILLMAN.) (lrc, COURT STAFF) (Filed on 9/15/2009) (Entered: 09/15/2009) |
| 10/27/2009 | 5 | Minute Entry for proceedings held before Judge Hon. Saundra Brown Armstrong:Status Conference as to Mark Claybrooks held on 10/27/2009 Status Conference set for 11/3/2009 09:00 AM. (Court Reporter DIANE SKILLMAN.) (lrc, COURT STAFF) (Filed on 10/27/2009) (Entered: 10/27/2009) |

| 11/02/2009 | 6 | STIPULATION *AND [PROPOSED] ORDER* by USA as to Mark Claybrooks (Bessette, Maureen) (Filed on 11/2/2009) (Entered: 11/02/2009) |
| 11/04/2009 | 7 | ORDER Excluding Time Under the Speedy Trial Act from 11/3/09 to 2/2/10 as to Mark Claybrooks re 6 Stipulation filed by USA. Plea and Sentence set for 2/2/2010 at 10:00 AM before Hon. Saundra Brown Armstrong. Signed by Hon. Saundra Brown Armstrong on 11/3/09. (kc, COURT STAFF) (Filed on 11/4/2009) (Entered: 11/05/2009) |
| 01/07/2010 | 8 | MOTION to Continue Sentencing Hearing by Mark Claybrooks. (kc, COURT STAFF) (Filed on 1/7/2010) (Entered: 01/12/2010) |
| 01/07/2010 | 9 | CLERK'S NOTICE to Defendant's Counsel re: Failure to E-File and/or Register regarding manually filed document # 8 . (kc, COURT STAFF) (Filed on 1/7/2010) (Entered: 01/12/2010) |
| 01/15/2010 | 10 | STIPULATION *CONTINUING PLEA AND SENTENCING AND PROPOSED ORDER* by USA as to Mark Claybrooks (Bessette, Maureen) (Filed on 1/15/2010) (Entered: 01/15/2010) |
| 01/22/2010 | 11 | ORDER TO CONTINUE - Ends of Justice as to Mark Claybrooks Time excluded from 2/2/10 until 3/23/10. Plea and Sentence set for 3/23/2010 10:00 AM before Hon. Saundra Brown Armstrong.. Signed by Judge Hon. Saundra Brown Armstrong on 1/22/10. (lrc, COURT STAFF) (Filed on 1/22/2010) (Entered: 01/22/2010) |
| 03/22/2010 | 12 | ORDER REFERRING CASE to Magistrate Judge as to Mark Claybrooks Plea and Sentence set for 3/23/2010 10:00 AM in Courtroom 4, 3rd Floor, Oakland before Magistrate Judge Laurel Beeler.. Signed by Judge Hon. Saundra Brown Armstrong on 3/22/10. (lrc, COURT STAFF) (Filed on 3/22/2010) (Entered: 03/22/2010) |
| 03/23/2010 | 13 | Minute Entry for proceedings held before Magistrate Judge Laurel Beeler: Change of Plea Hearing as to Mark Claybrooks held on 3/23/2010. Plea entered by Mark Claybrooks (1) Guilty as to Count(s) 3,4-5. Sentencing held on 3/23/2010 for Mark Claybrooks (1) as to Count 3, two (2) years probation; $25 special assessment; Count(s) 4-5, two (2) years probation; $50 special assessment; $7,000 fine. Count(s) 1-2, dismissed on government's motion. (Tape #FTR 3/23/10 10:47-11:19.) (kc, COURT STAFF) (Filed on 3/23/2010) (Entered: 03/24/2010) |
| 03/23/2010 | 14 | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE by Mark Claybrooks. (kc, COURT STAFF) (Filed on 3/23/2010) (Entered: 03/24/2010) |
| 03/23/2010 | 17 | PLEA AGREEMENT as to Mark Claybrooks (kc, COURT STAFF) (Filed on 3/23/2010) (Entered: 03/29/2010) |
| 03/24/2010 | 15 | ORDER REASSIGNING CASE. Case reassigned to Judge Magistrate Judge Laurel Beeler for all further proceedings. Judge Hon. Saundra Brown Armstrong no longer assigned to case. Signed by Executive Committee on 3/24/10. (kc, COURT STAFF) (Filed on 3/24/2010) (Entered: 03/24/2010) |
| 03/26/2010 | 16 | JUDGMENT in a Criminal Case as to Mark Claybrooks. Signed by Magistrate Judge Laurel Beeler on 3/26/2010. (ls, COURT STAFF) (Filed on 3/26/2010) (Entered: |

| | | |
|---|---|---|
| | | 03/26/2010) |
| 03/30/2010 | 18 | PAYMENT RECORD CARD: payment of special assessment in the amount of $75 paid on 3/23/10 on behalf of Mark Claybrooks. (kc, COURT STAFF) (Filed on 3/30/2010) (Entered: 03/30/2010) |
| 12/22/2010 | 19 | Probation form 49 by Sabrina Nagel as to Mark Claybrooks - The defendant shall make fine payments in the amount of $100 per month. Signed by Magistrate Judge Laurel Beeler on 12/22/2010. (ls, COURT STAFF) (Filed on 12/22/2010) (Entered: 12/27/2010) |
| 10/04/2011 | 20 | Probation form 12 by Jenna Russo as to Mark Claybrooks -the court concurs and takes judicial notice. Signed by Magistrate Judge Laurel Beeler on 10/4/2011. (ls, COURT STAFF) (Filed on 10/4/2011) (Entered: 10/05/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 06/20/2013 06:50:06 | | | |
| PACER Login: | kf0346 | Client Code: | Dennis Lerner |
| Description: | Docket Report | Search Criteria: | 4:09-cr-00744-LB |
| Billable Pages: | 3 | Cost: | 0.30 |